# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**GREGORY WAYNE SMITH,**

    **Petitioner,**

v.                                        **Civil action no. 2:04CV53**
                                          **Criminal action no. 2:01CR15**
                                          **(Judge Maxwell)**

**UNITED STATES OF AMERICA,**

    **Respondent.**

## REPORT AND RECOMMENDATION/OPINION

### I. PROCEDURAL HISTORY

On August 9, 2004, the *pro se* petitioner filed a Motion Under 28 U.S.C. §2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody. By Order entered on October 15, 2004, the Court Ordered the respondent to answer the motion. On December 14, 2004, the respondent filed United States' Response to Petitioner's Motion Made Pursuant to Title 28, United States Code, Section 2255.

On July 15, 2005, the petitioner filed a motion for default judgment, and on August 4, 2005, he filed a motion for appointment of counsel and motion for hearing.

This matter, which is pending before me for initial review and report and recommendation pursuant to LR PL P 83.15, is ripe for review.

### A. Conviction and Sentence

On February 15, 2002, the petitioner was found guilty by jury of two counts of being a felon in possession of firearms and one count of theft of firearms from a licensed firearms dealer. On November 18, 2002, the Court sentenced the petitioner to a total term of imprisonment of 151

months.

## B. Appeal

The petitioner appealed his conviction and sentence. By decision dated May 5, 2003, the Fourth Circuit Court of Appeals affirmed the petitioner's conviction and sentence.

## C. Federal Habeas Corpus

### Petitioner's Contentions

(1) Ineffective Assistance of Counsel -failure to alert court of a sleeping juror.

(2) Ineffective Assistance of Counsel -Sixth Amendment Confrontation Clause violations.

(3) Ineffective Assistance of Counsel - failure to conduct adequate investigation.

(4) Ineffective assistance of counsel -surrounding discovery violations/mistrial.

(5) Ineffective assistance of counsel - surrounding cumulative impact of trial counsel's errors.

(6) Improper sentence violating sixth amendment.

### Government's Contentions

(1) Petitioner's counsel was not ineffective for failing to alert the Court that a juror was sleeping because: 1) the Court knew the juror was sleeping but 2) even if the Court did not know a juror was sleeping, Petitioner's counsel stated in his affidavit that he did not know the juror was sleeping.

(2) None of the witnesses made express assertions about the case, and the petitioner's counsel thoroughly cross-examined Schoonover and Haddix.

(3) The petitioner provides no evidence of Talkington's drinking history.

(4) Talkington's statement that he was drinking on the night in question is irrelevant.

(5) The petitioner's counsel competently cross-examined every prosecution witness and his task is not to "correct" inconsistent testimony.

(6) The outcome of the petitioner's case would not have been different if his attorney had not stipulated to the fact that the firearms were transported in interstate commerce because he was found guilty of all counts including the theft of 43 firearms from a licensed firearm dealer and no firearms are manufactured in West Virginia and the offense occurred in West Virginia. Thus, all of the firearms were transported in interstate commerce.

(7) The blue ribbon certificate was admitted into evidence and revealed that Mitchell's Gun Shop was a federally licensed firearms dealer at the time the petitioner stole the firearms.

(8) Blakely v. Washington, 530 U.S. 466 (2004) does not apply to the petitioner's case.

## II. ANALYSIS

### A. Ineffective Assistance of Counsel

The petitioner asserts that his attorney was ineffective for numerous reasons. Counsel's conduct is measured under the two part analysis outlined in Strickland v. Washington, 466 U.S. 668, 687 (1984). First, the petitioner must show that his counsel's performance fell below an objective standard of reasonableness. Id. at 688. In reviewing claims of ineffective assistance of counsel, "judicial scrutiny of counsel's performance must be highly deferential," and the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 689-90.

Second, the petitioner must be prejudiced by counsel's performance. In order to demonstrate

prejudice, "the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. If the defendant shows no prejudice from the alleged ineffectiveness of counsel, courts need not address counsel's performance. Fields v. Att'y Gen. of Maryland, 956 F.2d 1290, 1297 (4th Cir.), cert. denied, 506 U.S. 885 (1992).

    **1. Failure to Alert Court of Sleeping Juror**

The petitioner asserts that the foreperson of the jury slept "during large and essential portions of the trial proceedings." According to the petitioner, but for sleeping, the juror may have noticed inconsistencies in the testimony of Clifford Talkington and Mickey Schoonover which in turn could have impacted the outcome of the trial.

In support of his assertion that a juror was sleeping, the petitioner submitted the affidavits of his wife, Patty Smith, and his son, Christopher Drummond. He also submitted the affidavit of his attorney who stated that he was not aware that the juror was sleeping. The petitioner also relies on the following comment made by the Court on the second day of trial: "I hope we're not starting to early or too late for Mr. Dustin Phillips." The petitioner notes that the sleeping juror responded "that's okay. I was up at 7:00."

First, contrary to the petitioner's assertion, the reply by the juror does not indicate the juror was sleeping during the first day of trial. Moreover, as recognized by the respondent, if the Court's comment was directed at the sleeping juror then there was no need for counsel to notify the Court of the sleeping juror. If the Court were not aware of the sleeping juror, the petitioner has not introduced any evidence that his counsel was aware the juror was sleeping or that counsel should

have been aware that the juror was sleeping. In fact, the petitioner's attorney stated in his affidavit that he was not aware the juror was sleeping. Furthermore, the petitioner does not assert that he advised his attorney that the juror was sleeping during trial.

Moreover, while the affidavits of Patty Smith and Chris Drummond indicate that the juror slept for more than 30 minutes during trial, and he was sleeping on more than one occasion, neither individual indicates who was testifying when the juror was sleeping, what testimony was given while the juror was sleeping, or whether they attempted to advise counsel that a juror was sleeping. Further, the petitioner has not demonstrated that he was prejudiced. He has not shown that had his attorney objected to the sleeping juror that the outcome of his trial would have been different.

A court is not required to remove sleeping jurors, but has substantial discretion in deciding how to handle a sleeping juror. United States v. Freitag, 230 F.3d 1019, 1023 (7th Cir. 2000). Thus, this claim is without merit.

### 2. **Denial of Constitutional Right to Confront Witnesses**

The petitioner asserts that he was denied his right of confrontation because his attorney was ineffective for failing to subpoena certain witnesses. Specifically, he asserts his attorney failed to subpoena the following individuals: (1) the girlfriend of Mickey Schooner, (2) James Bennett, and (3) Lisa Darquenne aka Lisa Hersham.

He further asserts that his attorney was ineffective for failing to object to the hearsay testimony of Mickey Schoonover and ATF Agent Dwayne Haddix which violated Crawford v. Washington, 541 U.S. 36 (2004). Specifically, he asserts the following testimony from Schoonover violated his constitutional right:

> Q. When Mr. Haddix came to your house, did he leave any message for you regarding what he wanted to talk to you about?

> A. No, he just said that it was Dwayne Haddix, because my girlfriend had asked the name.
>
> Q. Okay, so as far as from Mr. Haddix, you had no idea what he was wanting to talk to you about, correct?
>
> A. Right.

The petitioner also asserts that the following testimony by Schoonover violated his confrontation rights because the jury could infer that Bennett told Schoonover something which indicated the petitioner was involved with the burglary.

> Q. Okay, When did you first hear about the burglary?
>
> A: I think the 10th of November, the next morning after it happened.
>
> Q. When you heard about that, who did you hear it from?
>
> A. From my girlfriend's dad.
>
> Q. What's his name.
>
> A. James Bennett.
>
> Q. And, when you heard about that, did you have any thoughts about it?
>
> A. I knew - - I knew who had done it.
>
> Q. How would that be?
>
> A. Because I just –I knew.
>
> Q. And when you say you knew, who did you – who did you know?
>
> A. I knew Greg had done it, because he had been with Billy Haddix and Billy was with somebody around Teter Lake.

The petitioner also challenges the testimony of Agent Haddix regarding a space heater:

> Q. At the time he [Clifford Talkington] first told you-told you about his involvement, did he also tell you about the kerosene heater?

> A. Yes.
>
> Q. And were you able to obtain that heater?
>
> A. Based upon the information provided by him, Clifford Talkington, we went back and re-interviewed Mickey Schooner, and through Mickey Schoonover, I interviewed a Lisa Darquenne or Lisa Hershman, and she provided me with the heater.

"We evaluate the reasonableness of counsel's explanation for not calling these witnesses in light of 'the circumstances of counsel's challenged conduct, and ... from counsel's perspective at the time.' . . . 'The decision whether to call a defense witness is a strategic decision' demanding the assessment and balancing of perceived benefits against perceived risks, and one to which '[w]e must afford ... enormous deference.'" United States v. Terry, 366 F.3d 312, 317 (4th Cir. 2004)(internal citations omitted).

Thus, the undersigned finds that the decision of the petitioner's attorney to not subpoena the individuals in question was matter of trial strategy that was not unreasonable.

Further, the testimony of Schoonover and Haddix did not violate Crawford v. Washington, 541 U.S. 36 (2004). Crawford provides that the Sixth Amendment requires that out of court testimonial statements not be admitted in a criminal trial unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. The Supreme Court stated that "[w]e leave for another day any effort to spell out a comprehensive definition of '"testimonial.' Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." Id. at 68. The statement's of Schoonover's girlfriend, James Bennett, and Lisa Darquenne aka Lisa Hersham were not testimonial. Thus, there is no Crawford issue.

### 3. Failure to Investigate

The petitioner alleges that his counsel was ineffective for failing to investigate or cross-examine Clifford Talkington about whether he was drinking alcohol on the night of the burglary, and that counsel erred when he did not "reveal" to the jury that Talkington is an alcoholic, occasionally has blackouts, and lied to his friends and family, so that his credibility could be undermined. The petitioner asserts that Talkington was the only witnesses who identified the petitioner as the perpetrator.

There is no information whatsoever to support the petitioner's allegation that Talkington is an alcoholic. Moreover, there is no evidence that Talkington had been drinking the night of the burglary and even if he had, he was able to provide a detailed description of what transpired prior to, during, and after the burglary. Thus, the petitioner's attorney was not ineffective.

### 4. Failure to Move for Mistrial

The petitioner alleges that is attorney was ineffective for failing to move for a mistrial when he learned that he had not received Talkington's written statement in discovery and that such constitutes a Brady violation. The petitioner also asserts his attorney was ineffective for agreeing to Agent Haddix's testifying about Talkington's statement rather than recalling Talkington to the stand.

The United States Supreme Court has held that "[t]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87 (1963). Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been

8

different." United States v. Bagley, 473 U.S. 667, 682 (1985); United States v. Cole, 293 F. 3d 153 (4th Cir.), cert. denied, 537 U.S. 950 (2002).

The petitioner has not demonstrated that the affidavit of Talkington was exculpatory evidence. Further, the petitioner's claim of ineffective assistance of counsel based upon the failure to seek a mistrial is without merit because he has not shown any prejudice. Moreover, the petitioner's attorney suggested that Agent Haddix be recalled to the witness stand so that he could question Agent Haddix regarding his taking of Talkington's written statement and statements Talkington made. The record does not reveal the petitioner's attorney was ineffective regarding this issue.

### 5. **Failure to Correct Discrepancies in Witness Testimony**

The petitioner asserts that his attorney failed to point out to the Court and the jury that Talkington told the grand jury that he and the petitioner did not commit the burglary on the first occasion because a "light came on," but Talkington stated in a written statement that a "light went out in the trailer behind the shop" so they did not commit the burglary. The petitioner has not shown that he was prejudiced by his attorney's failure to focus on this discrepancy.

### 6. **Stipulating to Interstate Commerce Element**

The petitioner asserts that his attorney was ineffective for stipulating to the interstate commerce element when "nowhere within the record can it be sufficiently determined that all of the 43 firearms charged in Count One of the indictment 'had been shipped in interstate and foreign commerce.'" The petitioner also asserts that because his attorney stipulated to the amount of firearms, his sentence was enhanced.

The petitioner's claim is without merit. First, he signed the stipulation. Further, Agent

9

Haddix testified that 43 firearms had been stolen from the gun shop. Further, the jury found the petitioner guilty of all counts, including the theft of 43 firearms from a licensed dealer. Thus, the stipulation had no effect on the amount of guns for which he was held responsible.

Moreover, the respondent states that none of the firearms were manufactured in West Virginia, but all the offenses occurred in the Northern District of West Virginia. Thus, all of the firearms were transported in interstate commerce. Therefore, the petitioner was not prejudiced by his attorney's stipulating to the interstate commerce element.

**7. Failing to Challenge the Document Used to Establish the Federal Licensed Firearms Dealer.**

The petitioner asserts that there is no evidence that the license was effective on November 9, 2000, when the offense occurred and thus, the jury could not find him guilty of Count 2. He further asserts that counsel's failure to object to the admission of the Firearm's Dealers License was ineffective because it was unsigned and the dates on the license do not include November 9, 2000.

First, Agent Haddix testified that he reviewed the federal firearms license for Mitchell's Gun Shop and that he obtained a blue ribbon certification from the Bureau of Alcohol, Tobacco and Firearms which revealed that Mitchell's Gun Shop was a federally licensed firearms dealer at the time the petitioner stole the firearms. Further, the blue ribbon certificate was admitted into evidence. Thus, this claim is without merit.

**B. Blakely Claim**

The petitioner asserts that the sentencing enhancements he received were improper in light of Blakely v. Washington, 530 U.S. 466 (2004).[1] While the Fourth Circuit Court of Appeals has not

---

[1] Blakely v. Washington, 542 U.S. 296 (2004) as an extension of Apprendi v. New Jersey, 530 U.S. 466 (2000), holds that "when a judge inflicts punishment that the jury verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment, and the judge

10

ruled on the retroactivity of Booker, other circuits have held that Booker does not apply retroactively to §2255 motions when the judgment became final as of the date the Supreme Court issued Booker. See Varela v. United States, 400 F. 3d 864 (11th Cir. 2005); United States v. Price, 400 F. 3d 844 (10th Cir. 2005); Never Misses a Shot v. United States, 413 F. 3d 781 (8th Cir. 2005); McReynolds v. United States, 397 F. 3d 479 (7th Cir. 2005); Humphress v. United States, 398 F. 3d 855 (6th Cir. 2005); Lloyd v. United States, 407 F. 3d 608 (3d Cir. 2005); Guzman v. United States, 404 F. 3d 139 (2d Cir. 2005).

Here, the petitioner's conviction became final prior to the issuance of Booker. Consequently, he is not entitled to have the decision applied retroactively.

### III. MISCELLANEOUS MOTIONS

#### A. Motion for Default Judgment

On July 15, 2005, the petitioner moved for default judgment because he alleges that the Government did not respond to his §2255 motion as ordered by the Court. However, the Government timely filed its response on December 14, 2004. Thus, the petitioner's motion for default judgment should be denied.

#### B. Evidentiary Hearing

The petitioner seeks an evidentiary hearing. 28 U.S.C. §2255 provides in pertinent part as

---

exceeds his proper authority."

    The Supreme Court has held that Blakely applies to federal sentencing guidelines. United States v. Booker, ___ U.S.___, 125 S.Ct. 738 (2005). Specifically, in Booker the Supreme Court issued a two part decision. In the first part, the Supreme Court held that the mandatory sentencing guidelines violated a defendant's Sixth Amendment right to a jury trial because a judge, not a jury, determines facts which could increase the defendant's sentence beyond the sentence which could be imposed based on jury fact finding. In the second part of the decision, the Supreme Court severed the unconstitutional provisions from the Sentence Reform Act and made the guidelines advisory and established an unreasonableness standard of review for sentences on appeal. Thus, the petitioner's Blakley claim is now a Booker claim.

follows:

> [u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.

See also United States v. Witherspoon, 231 F.3d 923 (4th Cir. 2000).

Thus, if it is clear from the pleadings and the files and records that the movant is entitled to no relief, a hearing is not necessary. Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

Prior to determining whether an evidentiary hearing is required, "[i]t may instead be perfectly appropriate, depending upon the nature of the allegations, for the district court to proceed by requiring that the record be expanded to include letters, documentary evidence, and, in an appropriate case, even affidavits." Raines v. United States, 423 F.2d 526, 529-30 (4th Cir.1970).

The petitioner's motion and the Government's response conclusively establish that the petitioner is entitled to no relief. Thus, he is not entitled to an evidentiary hearing and his request for a hearing should be denied.

## C. Request for Counsel

The petitioner requests the appointment of counsel. The authority for the Court to appoint counsel in a § 2255 action is discretionary and there is no Constitutional right to have appointed counsel in post conviction proceedings. Pennsylvania v. Finley, 481 U.S. 551 (1987).

A Court may appoint counsel to a financially eligible person if justice so requires in a §2255 action. See 28 U.S.C. §2255; 18 U.S.C. §3006A. Appointment of counsel for a petitioner who qualifies for the appointment of counsel under 18 U.S.C. §3006A, is only required in a §2255 action when necessary for utilization of discovery procedures and when an evidentiary hearing is required.

12

See Rules 6(a) and 8(c) of the Rules Governing Section 2255 cases in the United States District Courts. Upon review of the file, I have concluded that the issues in this matter are not complex, that this matter does not require discovery or an evidentiary hearing, and that the petitioner has not demonstrated circumstances which demonstrate the need for appointment of counsel. Accordingly, the petitioner's motion for appointment of counsel should be denied.

## IV. **RECOMMENDATION**

The undersigned recommends that the Court enter an Order **DENYING** the petitioner's §2255 motion, his motion for default judgment, his motion for appointment of counsel and his request for an evidentiary hearing.

Any party may file within ten (10) days after being served with a copy of this Recommendation with the Clerk of the Court written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); Thomas v. Arn, 474 U.S. 140 (1985).

The Clerk of the Court is directed to provide a copy of this Report and

Recommendation/Opinion to the *pro se* petitioner and the United States Attorney for the Northern District of West Virginia.

Dated: September16, 2005

/s *John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE